All right. Our eighth case for this morning is United States v. Jacqueline Brewer. Mr. Henderson. Good morning. May it please the Court. I'm Peter Henderson. I'm here on behalf of Jacqueline Brewer. Let me start. The government has argued waiver here. I think the record is very clear that this issue was preserved at the resentencing hearing. Ms. Brewer raised it. The government didn't object, and the district court explicitly said, so these issues are reserved. So I'd like to dive into the merits. This isn't a complicated legal question. I think the one legal principle the Court should keep in mind is the government has the burden to prove enhancements to the sentencing guidance. I want to circle back to waiver for just a minute because it certainly would have been possible for Ms. Brewer to raise this point in the first appeal, right? Absolutely. And so ordinarily when there's a remand, even if it's a full sentencing remand, if the items remanded don't affect something that could have gone up in the first appeal, we would be likely to find waiver. So your argument has to rest on this brief exchange with the Court about saying, you know, I'm reinstating all of the findings, all of your objections are still preserved, whatever. Well, it's a little bit more than that because right before the resentencing hearing, Ms. Brewer submitted a document asking the Court basically to reconsider its prior findings on the obstruction enhancement. And so that's what prompted that exchange where the District Court said, okay, I've received this. It's a 10-page memo or so that she, did she have new evidence at that point? Well, there is a little bit of new evidence. There was a Social Security printout. I'm not sure it's terribly important to the resolution of the case, but she explicitly asked that this issue be reopened. There wasn't any argument and basically the District Court just incorporated its earlier findings. Well, that might make a difference if, in fact, obstruction was contested at the first sentencing, which it was not, right? Because there was an agreement that the only contest had to do with supervised release conditions? On the first appeal, you mean? Yeah. Right. That's the material point. The question is not error preservation at resentencing, it's error preservation at the original. But it was a remand for a full resentencing. So if she submitted this document, if the government had come back and said, judge, don't even consider this. She has waived this issue. She didn't raise it on appeal. Then we wouldn't be here. That would be waiver. But what the Whitlow case and other cases in the circuit have said is that if the government responds on the merits and doesn't assert an objection in the District Court on those resentencing hearings, then the government itself has waived its waiver and this court can then consider the merits. That's precisely what happened here. So you think the government missed a step when she submitted that memorandum. It should have said that's just off the table because it wasn't part of the first appeal. Right. Exactly. But by allowing the District Court to make a merits determination, the government has waived that waiver, essentially. And the Whitlow case, I think, is right on point when it comes to that. As to the actual merits of the claim, the real fault, we've laid out all of the reasons why it's really implausible that Ms. Brewer created this form. So I read all of that, and I gave you marks for creativity. But even if you were right that that's one way you could look at it, and I'll assume for the moment that you are, I can't get myself to think that's the only way to look at it. And since we're on clear error review, I'm not sure how the possibility of another approach helps you. Well, if that's the way you see the facts, I agree and the case should be affirmed. So what is it about your story that's so compelling? I don't think it's just another possibility. I think it is, in fact, very compelling because the types of inferences that the District Court drew in this case are just implausible. Why? This woman has spent her whole life defrauding people. Why not in this respect? Well, right, but that's not evidence. I mean, that's a, well, we think she did it, and so we're going to assume that if something looks improper that she did it. Well, but for example, your argument about the capital letters used, I mean, she could have created this phony document at a time where it would have been easy to copy the way Mr. Pettis fills things out. But where would, I mean, there's no evidence that she had anything that Mr. Pettis gave her in terms of a written document. The other thing that I find implausible about this is the way this form is filled out is so sloppy that it really stretches credibility to suggest that she's going to pay attention to those minute details and yet totally fill out the form wrong. Well, it looks, I mean, maybe it was your reply brief that said it looked like a Microsoft Word document where it tracked changes was left on because you got those things in the margin and the underscores and the strikeouts and all the rest of it. That made sense to me, but there are various ways you can get Word documents. Well, but so. You can email them to somebody. Well, right, but so this is a Social Security template, and it's not available to the public. So either she's found it through some sophisticated means. Social Security doesn't release these sort of templates because you don't want these templates in the hands of ordinary people because they could assert that they're entitled to something. And so, again, there's a, well, Pettis probably does have access to Social Security. But it's a bad template. It's an out-of-date template by more than a decade. Right. I mean, I am by no means any kind of IT expert, but there are ways that you can scan things in and get them converted even from PDF back into Word. Right. There are things one can do if one is actually good at it, which is I say I'm not. Right, well, and obviously whoever filled this out was not good at it. And there's a big discrepancy between the sophistication of having a template and arranging all that and then filling it in totally wrong. There are a couple other salient features that I think are very important. One is we have no idea why this Alton, Illinois address is on there. The only evidence about that is that this is a typo by Social Security because the branch codes between Alton and North Riverside are off by one digit. But Ms. Brewer has never been to Alton. Why, if she's creating this fraudulent document, is she going to put an address that she's never been to or the phone number she's never been to? We have a stamp that comes from the North Riverside office, and that's the most implausible thing that I think the district court speculated about, which is to say, well, she could have custom-ordered this stamp. That defies reason to suggest that she's going to create a fraudulent form, fill in the wrong address, and rather than just create it if she's that sophisticated, custom-order a stamp to say North Riverside. I think that that is clear error. I think we can have a definite and firm conviction that that is not what happened here. But, yes, I appreciate the track changes and, you know, many of the contents of the brief, I don't want to be glib about the sort of capabilities of word processing, but I think everybody can agree this is track changes. And all of the evidence points to Michael Pettis pulling up the wrong form on his computer. I don't think that that's... But that wasn't, he didn't use Microsoft Word forms, though. He used fillable PDFs. Well, he testified he couldn't remember how to fill these out. Yeah, but there are other people testifying, too, about this whole e-form program that they used. Right. He used the wrong procedure. Absolutely. I mean, it's, you know, I work in the government office. We have forms from 1990, you know, from the 90s where there's the wrong names and the wrong procedures. But in any case... Well, if you want to save just like one minute for your rebuttal, maybe that would be a good thing to do. Well, thank you, Judge. I will save that. All right. All right, Mr. Zuer. May it please the Court. Paul Zuer for the United States. The District Court did not commit clear error in concluding that the defendant obstructed justice in this case. I want to start, though, with the waiver argument. As this Court notes, the defendant affirmatively, intentionally, expressly relinquished its right to bring this argument on a second appeal when this case was up in front of this Court the first time around. Well, but that's not actually, of course, as you just heard, Ms. Brewer's argument. Of course, you're right if that was all there was to it. But then when it goes back to the District Court, I will say in total defense of everybody involved, the U.S. Attorney's offices, the defendants, the District Courts, there was a period of great uncertainty during the supervised release revolution as to how much was going to go on in a, quote, unquote, full resentencing. But she thinks, you know, it's just ab initio, and she comes in with this 10-page memorandum about the obstruction point. And instead of the government popping up and saying this is off the table, it wasn't part of the first appeal, don't consider it, please, it gets considered. And the District Court says things like all things are preserved. So it strikes me that this isn't quite the straightforward waiver case that the cases that you're talking about refer to. And it's just, I think it's an unfortunate consequence of what happened after Thompson and Capps and some of the other cases. Well, and let me, I think it makes sense for me to go through the chronology of that resentencing because it's not how the defendant is portraying it. We get back on resentencing. The defendant and the government cross-file sentencing briefs. I say nothing in the government submission about the obstruction point. I focus entirely on supervised release. The defendant makes, if I remember, three or four new points that she didn't make in her submissions at the initial sentencing hearing. Points about how she was mistreated, as she claimed, in the BOP, how she wasn't getting treatment for gambling addiction, etc. Those were absolutely new arguments that she didn't raise. Some of those arguments she could not have raised at the initial sentencing hearing. Because they were post-sentencing. They were post-sentencing. In two paragraphs, if I remember, about a half a page in that initial resentencing submission, she says essentially I'm re-raising everything that I raised before. Government then files a response to that brief by Ms. Brewer. Government says nothing about the obstruction issue in that response. Again, focusing on those other new arguments that the defendant had raised. So it says nothing about the I'm re-raising what I've raised before? Correct. Okay. And also importantly, in another argument in response to Ms. Brewer, the government makes clear to the court that this is a sentencing remand based on Thompson and saying anything beyond what the supervised release conditions, what has to do with supervised release conditions, is in violation of what the defendant had represented in this court on the first appeal. But that actually wouldn't be the case. Because the whole reason we were sending things back on full, quote, unquote, full resentencing, was because of the notion, whether you think it's right or not, that there's a certain tradeoff between how long supervised release is and how much time somebody spends in prison. That's exactly right. And so the district court could have changed the prison term and might have taken, and then the question is, well, what could the district court take into account in assessing what the package was supposed to look like? There wasn't some notion that the package had to stay the same. Right. It was whatever the district court wanted to do on remand. Absolutely. But here's where it gets tricky for the defendant. On the reply that she files in response to the government's response to her submission, she says nothing about obstruction of justice, only focuses on those new arguments that she made. And then at the 11th hour, just a couple days before sentencing, she files a supplemental sentencing submission where she, again, raises obstruction. It's not ten pages. It's two pages. It doesn't raise any new arguments. It doesn't assert anything about any new evidence. And then we get to sentencing, and there's no argument about it. Did you say anything when she filed the two-page? I'm sorry. I thought it was ten, but anyway, two-page document? No, but it came just a couple days before the hearing and after the briefing had been finished. Again, it was this 11th hour filing. I thought that there was, at some point along the way, either a filing or a statement on the record invoking waiver, at least to the effect of anything that was not raised in the initial appeal is considered waived and ought not to be revisited. Yes, and that was in the government's response to Ms. Brewer's resentencing submission. I'm sorry about all the documents that I'm talking about here. It wasn't directly in response to obstruction, but it was a general statement exactly as Your Honor is pointing out, that this resentencing was meant for adjusting supervised release conditions and then adjusting, as Your Honor is pointing out, the prison term to account for any changes in the supervised release condition. The government was explicit with the district court about that exact point in its submission. And that's the initial submission on remand. That is the government's response to Ms. Brewer's initial submission on remand. Right, but your initial submission. We're taking this position that this is not an opportunity to revisit all the guidelines calculations. It's just a revisiting of the supervised release conditions and perhaps adjustment of 3553 to account for any changes. And that's exactly right. But not in the guidelines. And that's exactly right, Your Honor. I do want to point out the- Although that's in some tension with some of our cases that discuss what a full resentencing is. In some tension with the Thompson cases, yes. Yes. I do think that there is a distinction between the Whitlow case cited by the defense and even the Barnes case that the government cited in its appellate brief and this case here. In both Whitlow and Barnes, there was a lot more activity that happened back in the district court on resentencing than what happened here. In Whitlow, the government did, in fact, argue the merits of new arguments that were raised by the defendants on resentencing. Government doesn't do that here. Government doesn't say anything about this issue on resentencing. In Barnes, the government does invoke waiver. I don't know how much more expressly than the government did here. But, again, there are new arguments raised by the defendant in the case below. Unlike either Whitlow or Barnes, there are no new arguments, no new evidence that's presented in the resentencing in front of Judge Chang after the remand from this court. And I do think that is a critical distinction between what happened here and what happened in any of those other cases. I haven't been able to find a case in this circuit that talks about this situation where there's no new evidence that's presented, no new arguments that are presented in the resentencing, and then have the case come back up on resentencing and try to argue the merits of a position that could have been taken in the case before. Now, all of that said, does this make any difference? I don't think so. I think when we get to the merits, the district court absolutely did not commit clear error in making the decision that it did. The district court listened to testimony of three individuals who worked at this North Riverside office. Witnesses Aguayo and Manchuk talked about the availability of electronic forms at that office, talked about that it was just this fillable PDF. It wasn't a Word document. Also talked about how the people who interacted with customers of the SSA met with those customers at shared station windows, not back at an employee's own personal desk space. So this was a shared computer where Pettis met with the defendant in July 2012. So he would have somehow had to go find some form that no one says existed in Word format and produce the document that Ms. Brewer submitted. There's no evidence that that happened. In fact, the evidence was exactly to the contrary, the only evidence that was supplied to Judge Chang at this hearing. And again, Judge Chang heard Mr. Pettis testify. He testified about what he did at the office. He testified about the document and why he knew that he did not create this document. And Judge Chang made a credibility finding. It's at page 194 of the sentencing transcript where he said, I find that Pettis testified credibly, that he did not create this document. The one piece, and I'm sorry that I didn't highlight this in the government's brief in this court, that was missing from the hearing is that there was no testimony from the defendant. Now, absolutely, the government had the burden of proving the obstruction enhancement, but this was the defendant's own document. The defendant was sponsoring this document in front of the district court, and ultimately this came down to an authenticity question about whether or not this document was, in fact, authentic. She did nothing to provide the district court with any evidence, any support saying that this was, in fact, an authentic document. I see my time is up. Government asks this court to affirm the judgment of the district court. All right, thank you very much. Anything further, Mr. Henderson? I just want to share my thoughts on the record. What happened below was the government asserted what had happened procedurally and said they didn't raise this on appeal, and so it should be considered with regard to mitigating circumstances regarding her gambling addiction. Not about guidelines, not about anything else. It wasn't a widespread, she's waived everything else. So this is in the, if we go look at the government's response, you're going to say it was limited to the gambling addiction point and not everything. That's right, and that's in document number 97 of page 3 where they discuss that. In document number 101, that is Ms. Brewer's assertion, and she says the defendant requests that the court reconsider the issues of obstruction and loss of acceptance, and then elaborates on that along with submitting some new evidence. Apart from that, unless there are further questions, we think our brief makes it perhaps a more compelling case than it was received, but I do think the judge clearly erred in describing this to Ms. Brewer. Thank you. All right, thank you. Thank you very much to both counsel. We'll take the case under advisement.